## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ZOE USA HOLDINGS, INC. et al.[1] | : | Case No. 14-12452 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------

### DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION

BLANK ROME LLP
John E. Lucian *(pro hac vice)*
One Logan Square
18th and Cherry Streets
Philadelphia, PA  19103
Telephone:  (215) 569-5500
Facsimile:  (215) 569-5555

and

Josef Mintz (DE No. 5644)
1201 N. Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6424

*Counsel for Debtors*

Dated:  January 29, 2015

---

1 The Debtors and the last four digits of their respective tax identification numbers are:  Zoe USA Holdings, Inc., a Delaware corporation (1964); MKEL Holdings LLC, a Delaware limited liability company (1104); Zoe Hotels, Inc., a New York corporation (9974); and Zoe Lodging, Inc., a Delaware corporation (3428).

# TABLE OF CONTENTS

**Page**

**ARTICLE I  - DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW** ...................................1

    A.    Defined Terms .............................................................................................1
    B.    Rules of Interpretation; Computation of Time; and Governing Law ..........5

**ARTICLE II  - CLAIMS AND INTERESTS**..........................................................6

    A.    Unclassified Claims ....................................................................................6
    B.    Classes of Unimpaired Claims and Interests .............................................6
    C.    Classes of Impaired Claims and Interests ..................................................6

**ARTICLE III  - TREATMENT OF CLAIMS AND INTERESTS**............................7

    A.    Unclassified Claims ....................................................................................7
    B.    Treatment of Unimpaired Claims ...............................................................8
    C.    Treatment of Impaired Claims ....................................................................8

**ARTICLE IV  - MEANS FOR IMPLEMENTATION OF THE PLAN**.....................9

    A.    Substantive Consolidation ..........................................................................9
    B.    Vesting of Assets ......................................................................................10
    C.    Dissolution of Debtors ..............................................................................10
    D.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes .....................................................................................................10

**ARTICLE V  - EFFECT OF PLAN CONFIRMATION** ........................................10

    A.    Discharge of Claims and Termination of Interests ...................................10
    B.    Releases by Recipients of Distributions ...................................................10
    C.    Injunction .................................................................................................11
    D.    Obligations under 28 U.S.C. § 1930(a)(6).................................................11
    E.    Retention and Destruction of Records ......................................................11

**ARTICLE VI  - TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...............................................................11

    A.    Executory Contracts and Unexpired Leases to Be Rejected......................11
    B.    Executory Contracts and Unexpired Leases to Be Assumed and Assigned ...............12

**ARTICLE VII  - PROVISIONS GOVERNING DISTRIBUTIONS** .......................12

    A.    General Distribution Provisions.................................................................12
    B.    Delivery of Distributions and Undeliverable or Unclaimed Distributions .................13
    C.    Means of Cash Payments ..........................................................................13
    D.    *De Minimis* Distributions.........................................................................13
    E.    Compliance with Tax Requirements..........................................................13
    F.    Setoffs ......................................................................................................14

143353.01600/22366653v.1

**ARTICLE VIII  - PROCEDURES FOR RESOLVING DISPUTED CLAIMS** .....................**14**

    A.     Prosecution of Objections to Claims ..........................................................14

    B.     Treatment of Disputed Claims ...................................................................14

    C.     Distributions on Account of Disputed Claims Once Allowed ...................15

**ARTICLE IX  - CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THIS PLAN** ...............................................**15**

    A.     Conditions to Confirmation ......................................................................15

    B.     Conditions to Effective Date ....................................................................15

    C.     Waiver of Conditions to Confirmation or Effective Date ..........................15

**ARTICLE X  - CRAMDOWN** ...............................................................................**15**

**ARTICLE XI  - RETENTION OF JURISDICTION** ..............................................**16**

**ARTICLE XII  - MISCELLANEOUS PROVISIONS** ............................................**17**

    A.     Modification of this Plan ..........................................................................17

    B.     Revocation of this Plan .............................................................................17

    C.     Post-Effective Date Role of Debtors' Director .........................................17

    D.     Severability of Plan Provisions .................................................................18

    E.     Service of Documents ...............................................................................18

    F.     Successors and Assigns .............................................................................18

    G.     Reservation of Rights ................................................................................18

143353.01600/22366653v.1

## INTRODUCTION

Zoe USA Holdings, Inc., Zoe Hotels. Inc., Zoe Lodging, Inc. and MKEL Holdings, LLC (collectively, "Debtors") propose the following joint liquidating chapter 11 plan (the "Plan") for the resolution of the outstanding Claims against, and equity Interests in, Debtors.  Debtors are the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code, 11 U.S.C. § 1129.  The Plan provides for substantive consolidation of the Debtors into a single Estate. Reference is made to the Disclosure Statement with respect to this Plan Filed contemporaneously herewith, for a discussion of Debtors' history and businesses, and for a summary and analysis of this Plan.  **All holders of Claims against and Interests in Debtors are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan.  Debtors reserve the right to alter, amend, or modify this Plan pursuant to the terms of this Plan and the Bankruptcy Code.**

## ARTICLE I  -  DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

### A.    Defined Terms

As used in this Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.    **"Administrative Claim"** means a Claim for costs and expenses of administration allowed under sections 503(b) and 507(b) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and managing the assets of the Debtors, including the winddown of the Estate; (b) compensation for legal, financial advisory, accounting and other services, and reimbursement of expenses awarded or allowed under sections 330(a) or 331 of the Bankruptcy Code; and (c) all fees and charges assessed against the Estate under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

2.    **"Administrative Claim Bar Date"** means 5 days prior to the Confirmation Date for Administrative Claims which arose on or after the Petition Date, or the otherwise applicable Bar Date by which a proof of Claim for an Administrative Claim must be Filed, as established by the Bankruptcy Court in any manner, including the Confirmation Order and this Plan.

3.    **"Allowed Claim"** means: (a) a Claim that has been listed by Debtors on their Schedules as other than disputed, contingent, or unliquidated, to the extent that it is not otherwise a Disputed Claim; (b) a Claim for which a proof of Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law, to the extent that it is not otherwise a

Disputed Claim; or (c) a Claim that is allowed:  (i) in a Final Order or (ii) pursuant to the terms of this Plan.

4.    **"Allowed . . . Claim"** means an Allowed Claim in the particular Class specified or as to a specified Administrative Claim or Priority Tax Claim.

5.    **"Avoidance Actions"** means any and all causes of action of Debtors or the Estate arising under sections 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code.

6.    **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended.

7.    **"Bankruptcy Court"** means the United States District Court for the District of Delaware and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the bankruptcy unit of such District Court.

8.    **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court, District of Delaware, as now in effect or hereafter amended.

9.    **"Bar Date"** means the date established by the Bar Date Order by which a proof of Claim must be Filed.

10.    "**Bar Date Order**" means the Court's *Order (A) Fixing the Procedures and Deadlines to File Proofs of Claim Pursuant to Fed. R. Bankr. P. 2002 and 3003 and Del. Bankr. L.R. 2002-1(E) and (B) Approving the Form and Manner of Notice of Bar Date* dated January 5, 2015 [Dkt. No. 35].

11.    **"Business Day"** means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.    **"Cause of Action"** means any claim or cause of action of Debtors or the Estate, including claims and causes of action pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code.

13.    **"Chapter 11 Cases"** means the chapter 11 cases pending for Debtors in the Bankruptcy Court.

14.    **"Claim"** means a "claim," as defined in section 101(5) of the Bankruptcy Code, against Debtors.

15.    **"Claims Objection Bar Date"** means, for all Claims, the latest of:  (a) 5 days prior to the Confirmation Date; (b)  such other period of limitation as may be specifically fixed by this Plan, the Confirmation Order, or the Bankruptcy Rules; and (d) such later date as provided for by order of the Bankruptcy Court.

16.     **"Class"** means a class of Claims or Interests, as described in Article II of this Plan.

17.     **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court in the Chapter 11 Cases.

18.     **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order, within the meaning of Bankruptcy Rules 5003 and 9021.

19.     **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court on Confirmation of this Plan, as such hearing may be continued from time to time.

20.     **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

21.     **"Debtors"** mean, collectively, Zoe USA Holdings, Inc., Zoe Hotels. Inc., Zoe Lodging, Inc. and MKEL Holdings, LLC.

22.     **"Disclosure Statement"** means the disclosure statement (including all exhibits and schedules thereto or referenced therein) that relates to this Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as the same may be amended, modified, or supplemented.

23.     **"Disputed Claim"** means:

a.      if no proof of Claim has been Filed by the applicable Bar Date or Administrative Claim Bar Date or has not otherwise been deemed timely Filed under applicable law:  (i) a Claim that is listed on Debtors' Schedules as other than disputed, contingent, or unliquidated, but as to which an objection has been Filed by the Claims Objection Bar Date, and such objection has not been withdrawn or denied pursuant to a Final Order, or (ii) a Claim that is listed on Debtors' Schedules as disputed, contingent, or unliquidated; or

b.      if a proof of Claim or request for payment of an Administrative Claim has been Filed by the applicable Bar Date or Administrative Claim Bar Date, or has otherwise been deemed timely Filed under applicable law, a Claim for which an objection has been Filed by the Claims Objection Bar Date, and such objection has not been withdrawn or denied pursuant to a Final Order.

24.     **"Distributable Assets"** means all of the property of the Estate, as defined in section 541 of the Bankruptcy Code.

25.     **"Distribution Date"** means one or more Business Days on which some or all Distributable Assets will be distributed to holders of Allowed Claims.

26.     **"Effective Date"** means a Business Day, as determined by Debtors, that: (a) is as soon as reasonably practicable after the Confirmation Date; and (b) is the day on which (i) all

conditions to the Effective Date in Section IX.B have been met or waived pursuant to Section IX.C and (ii) no stay of the Confirmation Order is in effect.

27.    **"Estate"** means the substantively consolidated estate of the Debtors in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

28.    **"Executory Contract or Unexpired Lease"** means a contract or lease to which one or more Debtors is a party that is capable of being assumed or rejected under section 365 of the Bankruptcy Code.

29.    **"Fee Claim"** means a Claim under sections 330(a), 331, 503(b)(3), 503(b)(4) or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Cases.

30.    **"File," "Filed,"** or **"Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

31.    **"Final Decree"** means an Order entered by the Court pursuant to the Local Bankruptcy Rules closing the Chapter 11 Case.

32.    **"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek *certiorari* has expired, and no appeal or petition for *certiorari* has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been timely Filed has been resolved by the highest court to which the order or judgment was appealed or from which *certiorari* was sought.

33.    **"General Unsecured Claim"** means any Claim that is not an Administrative Claim or a Priority Tax Claim or a Secured Claim.

34.    **"General Unsecured Creditor"** means a holder of a General Unsecured Claim.

35.    **"Impaired"** refers to any Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

36.    **"Interest"** means any right of any holder of any equity security of the Debtor and the rights of any entity to purchase or demand the issuance of any equity security of the Debtor, including:  (a) redemption, conversion, exchange, voting, participation, and dividend rights; (b) liquidation preferences; and (c) stock options and warrants.

37.    **"Petition Date"** means the date on which Debtors each filed a voluntary petition under Chapter 11 of the Bankruptcy Code (i.e., October 31, 2014).

38.    **"Plan"** means this joint liquidating chapter 11 plan and all exhibits attached hereto or referenced herein, as the same may be amended, modified, or supplemented.

4

39.     **"Priority Tax Claim"** means a Claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

40.     **"Pro Rata"** means, when used with reference to a distribution of cash, proportionately so that, with respect to a particular Allowed Claim, the ratio of (a) the amount of cash distributed on account of such Allowed Claim to (b) the amount of such Allowed Claim, is the same as the ratio of (x) the amount of cash distributed on account of all Allowed Claims of the Class in which such Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

41.     **"Professional"** means any professional employed by Debtors in the Chapter 11 Cases pursuant to the Bankruptcy Code.

42.     **"Released Parties"** has the meaning given such term it in Section V.B of this Plan.

43.     **"Schedules"** means the schedules of assets and liabilities Filed by each of the Debtors on the Petition Date, as the same may have been or may be amended, modified, or supplemented.

44.     **"Secured Claim"** means a Claim that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code or applicable law, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and, if applicable, section 1129(b) of the Bankruptcy Code.

45.     **"Statement of Financial Affairs"** means the statements of financial affairs filed by each of the Debtors on the Petition Date, as the same may have been or may be amended, modified, or supplemented.

**B.    Rules of Interpretation; Computation of Time; and Governing Law**

**1.     Rules of Interpretation**

For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a holder of a Claim includes that entity's successors, assigns, and affiliates; (e) all references in this Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and

5

Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.

### 2.     Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.   The provisions of Bankruptcy Rule 9006(a) shall be deemed to apply even after the Effective Date.

### 3.     Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of a contract, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and constructed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

## ARTICLE II  -  CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below.   A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Section III.A, have not been classified and thus are excluded from the following Classes.

**A.     Unclassified Claims**

> **1.     Administrative Claims**

> **2.     Priority Tax Claims**

**B.     Classes of Unimpaired Claims and Interests**

> **1.     Class 1:  Secured Claims**

**C.     Classes of Impaired Claims and Interests**

> **1.     Class 2:  General Unsecured Claims**

> **2.     Class 3: Interests in Debtors**

6

## ARTICLE III  -  TREATMENT OF CLAIMS AND INTERESTS

**A.      Unclassified Claims**

**1.      Payment of Administrative Claims**

**a.      Administrative Claims in General**

Except as specified in this Section III.A.1, and subject to the Administrative Claim Bar Date provisions herein, unless otherwise agreed by the holder of an Allowed Administrative Claim against Debtors, each holder of an Allowed Administrative Claim against Debtors shall receive, in full satisfaction of its Claim, cash equal to the amount of such Allowed Administrative Claim as soon as practicable after the Effective Date or, if the Administrative Claim is not allowed as of the Effective Date, as soon as practicable after 30 days after the date on which an order allowing such Claim becomes a Final Order.

**b.      Statutory Fees**

On the Effective Date, Allowed Administrative Claims against Debtors for fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in cash equal to the amount of such Allowed Administrative Claims.  Fees payable pursuant to 28 U.S.C. § 1930 for time periods after the Confirmation Date shall be paid on a quarterly basis as required under 28 U.S.C. § 1930(a)(6), based on Filed quarterly reports, until the Bankruptcy Court enters a Final Decree closing the Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed, whichever occurs first.

**c.      Bar Dates for Administrative Claims**

**i.      General Bar Date Provisions**

Except as otherwise provided in Section III.A.1.c.ii, unless previously Filed, requests for payment of Administrative Claims that arose on or after the Petition Date, must be Filed and served on Debtors, no later than 5 days prior to the Confirmation Hearing. Holders of Administrative Claims that do not File and serve a required request by the applicable Administrative Claim Bar Date shall be forever barred from asserting such Claims.  Objections to such requests must be Filed and served on the parties that were served with such requests and the requesting party no later than the Confirmation Hearing.

**ii.      Bar Dates for Fee Claims**

Professionals or other entities asserting a Fee Claim for services rendered before the Effective Date must File and serve an application for final allowance of such Fee Claim no later than 60 days after the Effective Date.

**2.      Payment of Priority Tax Claims**

**a.      Priority Tax Claims**

7

Unless otherwise agreed by the holder of an Allowed Priority Tax Claim and Debtors, each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of its Allowed Claim, cash equal to the amount of such Allowed Priority Tax Claim as soon as practicable after the Effective Date or, if the Priority Tax Claim is not allowed as of the Effective Date, as soon as practicable 30 days after the date on which an order allowing such Claim becomes a Final Order. (Debtors do not believe they have any tax liability and have filed a motion under Section 505 of the Bankruptcy Code for a determination of same).

### b.        Other Provisions Concerning Treatment of Priority Tax Claims

The holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim, unless such penalty is part of an Allowed Claim that is allowed by order of the Bankruptcy Court prior to the Confirmation Date. Any such Claim or demand for any such penalty shall be deemed disallowed by Confirmation of this Plan and the holder of an Allowed Priority Tax Claim shall be enjoined from assessing or attempting to collect such penalty from the Estate.

### B.        Treatment of Unimpaired Claims

### 1.        Class 1 – Secured Claims

Debtors do not believe there are any Secured Claims against the Estate. However, to the extent that there are any Secured Claims, as soon as practicable after the Effective Date, the holder of an Allowed Secured Claim shall receive in full satisfaction of its Allowed Class 1 Claim, at the option of Debtors: (a) the net proceeds of the sale of the collateral securing such Claim, up to the amount of the Allowed Claim of such holder; (b) the return of the collateral securing such Claim; or (c) cash equal to the value of the collateral securing such Claim, up to the amount of the Allowed Claim of such holder. In the event that the collateral is not returned in satisfaction of such Claim, any remaining portion of the Claim shall be treated as a Class 2 Claim.

### C.        Treatment of Impaired Claims

### 1.        Class 2 – General Unsecured Claims

Each holder of an Allowed Class 2 Claim shall receive, in full satisfaction of such Allowed Claim, a Pro Rata share of the Distributable Assets after the holders of Allowed Administrative Claims, Allowed Class 1 Claims, and Allowed Priority Tax Claims are paid in full pursuant to the provisions of this Plan, but no more than the amount of its Allowed Class 2 Claim.

### 2.        Class 3 – Interests in Debtors

To the extent any Distributable Assets remain after the holders of Allowed Administrative Claims, Allowed Class 1 and 2 Claims, and Allowed Priority Tax Claims are paid

143353.01600/22366653v.1

in full pursuant to the provisions of this Plan, then the holders of any Interest in Debtors shall receive their Pro Rata share of such remaining Distributable Assets.  To the extent no Distributable Assets are available, then such Interests shall be deemed terminated upon the Effective Date.  Debtors do not anticipate making a distribution on account of Class 3 Interests.

## ARTICLE IV  -  MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Substantive Consolidation

Entry of the Confirmation Order shall constitute approval, pursuant to sections 105(a) and 1123(a)(5) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors into the Estate for the purposes of confirming and consummating the Plan, and making distributions thereunder.  Accordingly, upon the Effective Date, (a) the assets and liabilities of the Debtors will be deemed to be the assets and liabilities of a single, consolidated entity, (b) each and every Claim Filed or to be Filed in the Chapter 11 Cases against any of the Debtors shall be considered Filed against the consolidated Estate and shall be considered one Claim against and an obligation of the consolidated Estate on and after the Effective Date, (c) all joint obligations of two or more of the Debtors, and all multiple Claims against such entities on account of such joint obligations, are considered a single claim against the consolidated Estate, (d) any intercompany Claims between the Debtors shall be waived and eliminated, and (e) all guaranties by any of the Debtors of the obligations of any Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any Debtor and any guaranty thereof executed by any other Debtor and any joint and several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Estate.

Such deemed consolidation, however, shall not (other than for purposes related to making distributions under the Plan) affect (a) the legal and organizational structure of the Debtors, (b) any executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected, (c) any agreements entered into by the Debtors on or after the Effective Date and (d) the Debtors' ability to subordinate or otherwise challenge Claims on an entity-by-entity basis.  Notwithstanding the substantive consolidation called for herein, each Debtor shall remain responsible for the payment of U.S. Trustee Fees pursuant to 28 U.S.C. § 1930 until its particular case is closed, dismissed or converted.  Moreover, Debtors reserve the right to seek confirmation of the Plan on an entity-by-entity basis.

*Debtors believe substantive consolidation is appropriate and will not harm creditors for the following reasons*: (1) Debtors believe that only Zoe Hotels, Inc. has non-contingent, undisputed creditors, (2) Debtors' known Distributable Assets, consisting primarily of cash that, as of the Petition Date, exceeds $1 million, reside with Zoe Hotels, Inc. (3) since cessation of hotel operations in 2005, Debtors have not dealt separately with creditors, (4) Debtors do not believe that any of their non-contingent, undisputed creditors relied on the separateness of Debtors, and (5) Debtors' largest creditors, IDF Hotels (UK) & Resorts Ltd. (in liquidation) and Zoe Acquisition Company I, Ltd. (in liquidation) consent to the deemed substantive consolidation under the Plan.

9

**B.      Vesting of Assets**

On the Effective Date, any and all Distributable Assets not previously distributed shall be retained in the Estate for disposition by Debtors.  Any such assets not disposed of by Debtors as of the date of closing of this Chapter 11 Case shall be deemed abandoned.

**C.      Dissolution of Debtors**

As soon as practicable after the Effective Date, Debtors may be wound up and dissolved in accordance with state law.

**D.      Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes**

Debtors shall be authorized to execute, deliver, File, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan.

## ARTICLE V  -  EFFECT OF PLAN CONFIRMATION

**A.      Discharge of Claims and Termination of Interests**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation shall not discharge Claims against Debtors or the Estate; *provided, however,* that no holder of a Claim against any of Debtors or Estate may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, Debtors or property of the Estate, except as expressly provided in this Plan.

**B.      Releases by Recipients of Distributions**

**Except as otherwise expressly set forth in this Plan or the Confirmation Order, each and every entity receiving a distribution pursuant to this Plan on account of its Allowed Claim shall be deemed to forever release, waive, and discharge all Claims, demands, debts, rights, causes of action, and liabilities in connection with or related to Debtors, the Chapter 11 Cases, or this Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, that are based in whole or in part on any act, omission, or other occurrence taking place on or prior to the Effective Date, against Debtors, their current and former officers and directors, and their Professionals (collectively, the "Released Parties") to the fullest extent permitted under applicable law.  Notwithstanding anything in this Plan or in the releases set forth above to the contrary, nothing herein shall be construed to release, and Debtors and the Estate do not hereby release, any of their rights: (1) to enforce this Plan and any contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder; (2) to litigate Disputed Claims, including without limitation to make any Claim, or demand or allege and prosecute any cause of action against any holder of any**

**Disputed Claims; and (3) to litigate Claims and causes of action not specifically released herein.**

**C.    Injunction**

**Except as expressly set forth in this Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold, or may hold a Claim or other debt or liability against Debtors or the Estate or an Interest or other right of an equity security holder are permanently enjoined from taking any of the following actions on account of any such Claims, debts, or liabilities, or Interests or rights: (1) commencing or continuing in any manner any action or other proceeding against the Released Parties or their property; (2) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Released Parties or their property; (3) creating, perfecting, or enforcing any lien or encumbrance against the Released Parties or their property; (4) asserting a right of subordination of any kind against any debt, liability, or obligation due to the Released Parties or their property; and (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.**

**D.    Obligations under 28 U.S.C. § 1930(a)(6)**

Consistent with Article III.A.1.b, *supra*, from and after the Effective Date, the Estate shall continue to pay fees on behalf of all Debtors for each Debtor due to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the entry of a Final Decree closing the Chapter 11 Cases or the Chapter 11 Cases are converted or dismissed, whichever occurs first.

**E.    Retention and Destruction of Records**

On the Effective Date and until the entry of the Final Decree, Debtors shall continue to maintain all necessary records in their possession.  All nonessential and aged financial and administrative documents and related records shall be abandoned and destroyed as soon as practicable after the Effective Date without the necessity of a motion or Order.

**ARTICLE VI  -  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.    Executory Contracts and Unexpired Leases to Be Rejected**

On the Effective Date, except for an Executory Contract or Unexpired Lease that was previously assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court, each and every Executory Contract and Unexpired Lease entered into by Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be rejected pursuant to section 365 of the Bankruptcy Code to the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.  If the rejection of an Executory Contract or

11

Unexpired Lease gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred unless a proof of Claim is Filed and served pursuant to the procedures specified in the Confirmation Order and the notice of the entry of the Confirmation Order or another order of the Bankruptcy Court, no later than 30 days after the Effective Date. DEBTORS DO NOT BELIEVE THERE ARE ANY EXECUTORY CONTRACTS OR UNEXPIRED LEASES IN THE ESTATE AT THIS TIME.

**B.    Executory Contracts and Unexpired Leases to Be Assumed and Assigned**

Debtors are not assuming or assigning any executor contracts or unexpired leases.

**ARTICLE VII  -  PROVISIONS GOVERNING DISTRIBUTIONS**

**A.    General Distribution Provisions**

**1.    Method of Distributions to Holders of Claims**

Debtors shall make all distributions required under this Plan.

**2.    Distributions to Be Made on the Effective Date**

Distributions to be made on or as soon as practicable after the Effective Date to holders of Allowed Claims shall be deemed made on the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than 30 days after the Effective Date, except as otherwise provided herein.  Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made pursuant to this Plan.

**3.    Timing and Calculation of Amounts to Be Distributed**

**a.    Distribution Dates**

Distribution Dates for all Classes of Claims shall be established by Debtors in their sole discretion.  Debtors shall establish Distribution Dates with a goal of making distributions to holders of Claims as soon as practicable, but shall not establish a Distribution Date for a distribution unless sufficient funds exist to warrant making such a distribution.  Before making any distribution, Debtors shall establish an appropriate reserve for the payment of costs. In making any distribution, Debtors shall account for and reserve for distributions that are being made and/or shall need to be made to other Classes and to other members of the same Class, pursuant to the provisions of this Plan.

**b.    Timing of Payment of Distributions of Less Than $25**

To the extent that any distribution to be made to an Allowed Claim holder (which Allowed Claim holder has not already received a distribution hereunder) on any Distribution Date is less than $25, such distribution may, in the sole discretion of Debtors, be withheld until a later Distribution Date on which the cumulative amount to be distributed to such Allowed Claim holder is equal to or greater than $25, if ever.

12

**B.**     **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

**1.**     **Delivery of Distributions in General**

Distributions to holders of Allowed Claims shall be made:  (a) at the addresses set forth on the respective Claims Filed by holders of such Claims; (b) at the addresses set forth in any written certification of address change delivered to Debtors after the date of Filing of the Claim; or (c) at the addresses reflected in Debtors' Schedules if no Claim has been Filed and no written notice of a change of address has been received.

**2.**     **Undeliverable Distributions**

If any distribution to an Allowed Claim holder is returned as undeliverable, no further distributions shall be made to such holder unless and until Debtors are notified by written certification of such Claim holder's then-current address.  Nothing contained in this Plan shall require Debtors to attempt to locate any holder of an Allowed Claim.  Undeliverable distributions shall remain in Debtors' possession pursuant to this section until such time as a distribution becomes deliverable.  Any holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable distribution prior to the earlier of: (i) three months after the last date on which a distribution was first deliverable to such Allowed Claim holder or (ii) Debtors' filing of their motion for Final Decree, shall be forever barred from asserting any such Claim.  In such cases, any cash held for distribution on account of such Claims shall be redistributed to holders of Allowed Claims in the same Class as the undeliverable distribution.

**C.**     **Means of Cash Payments**

Except as otherwise specified herein, cash payments made pursuant to this Plan shall be in U.S. dollars by checks drawn on a domestic bank, or by wire transfer from a domestic bank, at the option of Debtors.

**D.**     ***De Minimis* Distributions**

Debtors shall not be required to make a distribution to the holder of an Allowed Claim if the aggregate amount to be distributed on account of such Claim is less than $25.  Any holder of an Allowed Claim on account of which the amount to be distributed is less than $25 shall be forever barred from asserting any such Claim.  Any amounts not distributed pursuant to this Section with respect to Allowed Claims shall be redistributed to holders of Allowed Claims.

**E.**     **Compliance with Tax Requirements**

In connection with this Plan, to the extent applicable, Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any other provision of this Plan, each entity receiving a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction

and payment of any tax obligations imposed on it by any governmental unit on account of such distribution, including income, withholding, and other tax obligations.

## F.    Setoffs

Except with respect to Claims of Debtors released pursuant to this Plan or any contract, instrument, release, or other agreement or document created in connection with this Plan, Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim) the Claims, rights, and causes of action of any nature that Debtors may hold against the holder of such Allowed Claim; *provided, however,* that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtors of any such Claims, rights, and causes of action that each may possess against such holder.

## ARTICLE VIII  -  PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.    Prosecution of Objections to Claims

All objections to Claims must be Filed and served on the holders of such Claims by the Claims Objection Bar Date (i.e., 5 days prior to the Confirmation Hearing).  If an objection has not been Filed to a proof of Claim or a Claim that is listed in Debtors' Schedules as other than contingent, unliquidated or disputed by the Claims Objection Bar Date, the Claim to which the proof of Claim or scheduled Claim relates shall be treated as an Allowed Claim.

### B.    Treatment of Disputed Claims

#### 1.    No Payments on Account of Disputed Claims

Notwithstanding any other provisions of this Plan, no payments or distributions shall be made on account of a Disputed Claim until such Claim or portion of such Claim becomes an Allowed Claim.

#### 2.    Recourse

Each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall have recourse only to the undistributed cash held by Debtors and not to any assets previously distributed on account of any Allowed Claim.  To the extent that reserves were established by Debtors with respect to: (a) an unliquidated Claim or Claims or (b) any Claim or Claims that are ultimately allowed in an amount greater than its or their face amount, and such reserves are not sufficient to cover the amount to be paid to remaining Allowed Claims in a Class, Debtors and their directors, agents, attorneys, and accountants shall have no liability therefore and holders of such remaining Allowed Claims shall have recourse only to the undistributed cash held by Debtors and not to any assets previously distributed on account of any Allowed Claim.

14

**C.      Distributions on Account of Disputed Claims Once Allowed**

On each Distribution Date, Debtors shall make all appropriate distributions on account of any Disputed Claim that became an Allowed Claim since the previous Distribution Date. Such distributions shall be made pursuant to the provisions of this Plan governing the applicable Class.

## ARTICLE IX  -  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN

**A.      Conditions to Confirmation**

The Bankruptcy Court shall not enter the Confirmation Order unless and until each of the following conditions has been satisfied or duly waived by the Debtor pursuant to Section IX.C:

1.      The Confirmation Order shall be reasonably acceptable in form and substance to Debtors; and

2.      The Confirmation Order shall authorize Debtors to take all actions necessary or appropriate to implement this Plan.

**B.      Conditions to Effective Date**

The Effective Date shall not occur and this Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived by Debtors pursuant to Section IX.C:

1.      The Confirmation Order shall have become a Final Order;

2.      Sufficient funds exist to pay all projected Allowed Administrative Claims; and

3.      Debtors' motion to determine final tax liability under section 505 of the Bankruptcy Code has been resolved by a Final Order.

**C.      Waiver of Conditions to Confirmation or Effective Date**

The conditions to Confirmation and the Effective Date set forth herein may be waived in whole or part by Debtors at any time without an order of the Bankruptcy Court. The failure to satisfy or waive a condition may be asserted by Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtors).

## ARTICLE X  -  CRAMDOWN

Debtors request Confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not, or is deemed not to, accept this Plan pursuant to section 1126 of the Bankruptcy Code. Debtors reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE XI  -  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Case after the Effective Date as is legally permissible, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

2.      Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

3.      Resolve any matters related to the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which Debtors or the Estate is a party or with respect to which Debtors or the Estate may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, including Cure Amount Claims;

4.      Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

5.      Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving Debtors or the Estate that may be pending on the Effective Date or that are related to causes of action prosecuted by Debtors before or after the Effective Date;

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan;

7.      Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan, or any contract, instrument, release, or other agreement or document that is executed or created pursuant thereto, or any entity's rights arising from or obligations incurred in connection with such documents;

8.      Upon appropriate motion by a party in interest, enter an order modifying this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modifying the Disclosure Statement, the Confirmation Order, or any other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order in such manner as may be necessary or appropriate to consummate this Plan;

9.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

16

10.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated or distributions pursuant to this Plan are enjoined or stayed;

11.     Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan; and

12.     Enter an order concluding the Chapter 11 Case.

## ARTICLE XII  -  MISCELLANEOUS PROVISIONS

### A.     Modification of this Plan

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code for material modifications, Debtors reserve the right to alter, amend, or modify this Plan before its substantial consummation.

### B.     Revocation of this Plan

Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date. If Debtors revoke or withdraw this Plan, or if Confirmation or the Effective Date does not occur, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall: (1) constitute a waiver or release of any Claims by or against, or any Interests in, Debtors or the Estate; or (2) prejudice in any manner the rights of Debtors or the Estate or any other party in interest.

### C.     Post-Effective Date Role of Debtors' Director

In lieu of a plan administrator, Debtors' sole remaining director, James Shinehouse, Partner at Atlantic Financial Advisory Partners ("AFAP") shall continue to serve as the authorized representative of the Estate after the Effective Date until such time as Debtors have liquidated any remaining Distributable Assets, distributed the cash proceeds of any such Distributable Assets in accordance with the terms of the Plan, and obtained the entry of a Final Decree; provided, however, on and after the Effective Date, Mr. Shinehouse may, in his sole discretion, appoint a successor representative of the Estate upon ten (10) days written notice to the Office of the U.S. Trustee.  On and after the Effective Date, Mr. Shinehouse shall be entitled to reasonable compensation without the necessity of Court approval.  His compensation will be disclosed on a quarterly basis in Debtors' post-confirmation reports until the entry of a Final Decree.  AFAP shall be entitled to compensation for Mr. Shinehouse's services and back office support at the rate of $12,500 per month plus reimbursement of reasonable and necessary expenses.  Additionally, Mr. Shinehouse may retain, without prior court approval, the services of legal counsel and other professionals reasonably necessary to assist him in carrying out the Plan and winding down Debtors' consolidated Estate.  For the avoidance of doubt, Debtors' proposed legal counsel, Blank Rome LLP, may continue to represent Debtors on a post-Confirmation basis.

143353.01600/22366653v.1

### D.   Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision.  The remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### E.   Service of Documents

Any pleading, notice, or other document required by this Plan or the Confirmation Order to be served on or delivered to Debtors must be sent by regular U.S. mail, overnight delivery service, courier service, or messenger to:

> John Lucian, Esquire
> Blank Rome LLP
> One Logan Square
> 130 N. 18th Street
> Philadelphia, PA 19103

### F.   Successors and Assigns

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

### G.   Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or equity interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

*[Remainder of page intentionally left blank]*

143353.01600/22366653v.1

Zoe USA Holdings, Inc., MKEL Holdings LLC,
Zoe Hotels, Inc., Zoe Lodging, Inc.,
Debtors and Debtors in Possession


By: */s/ James Shinehouse*
     James Shinehouse
     President


**SIGNATURE PAGE TO DEBTORS' JOINT PLAN OF LIQUIDATION**

19